HÜLS AMERICA, INC., Plaintiff,

v.

Carol M. BROWNER

and

United States Environmental Protection
Agency, Defendants.

Civ. A. No. 95–0042 (TFH).

United States District Court,
District of Columbia.

June 21, 1995.

William K. Rawson, Latham & Watkins,
Washington, DC, for plaintiff.

Mary F. Edgar, U.S. Dept. of Justice,
Environmental Defense Section, Washington,
DC, for defendants.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Before the Court are cross-motions for
summary judgment concerning a chemical

listing under the Emergency Planning and Community Right–to–Know Act of 1986 (EPCRA), 42 U.S.C. § 11001 *et seq.* This action arises because the defendants, Carol M. Browner and the United States Environmental Protection Agency (EPA), denied the petition of the plaintiff, Hüls America, Inc. (Hüls), to remove isophorone diisocyanate (IPDI) from a list of "extremely hazardous substances" established by EPCRA. For the reasons discussed below, the Court will deny the plaintiff's motion for summary judgment and grant the defendants' motion for summary judgment.

## I. BACKGROUND

EPCRA was signed into law in 1986 at Title III of the Superfund Amendments and Reauthorization Act of 1986. Pub.L. No. 99–499, 100 Stat. 1613 (1986). Congress passed the law to encourage state and local planning for accidental releases of certain chemicals called "extremely hazardous substances" (EHSs). Pursuant to 42 U.S.C. § 11002, a facility must notify the relevant state agency of the presence of an EHS in excess of its "threshold planning quantity."

Congress mandated that the original EHS list be identical to the list EPA published for its Chemical Emergency Preparedness Program (CEPP). Isophorone diisocyanate (IPDI) was one of the chemicals originally designated through CEPP. As a result, IPDI was automatically designated as an EHS when EPCRA became law in 1986. The original EHS list was published in the *Federal Register* on November 17, 1986. 51 Fed.Reg. 41,570. Congress authorized EPA to revise the EHS list under the criteria set forth in EPCRA. These criteria are the subject of the action between Hüls and EPA.

On November 25, 1992, Hüls petitioned EPA to remove IPDI from the EHS list. Hüls is one of the leading marketers of IPDI in the United States. Hüls contended that leaving the chemical on the EHS list would create significant reporting burdens for its customers and would generate a public misconception that IPDI poses serious and immediate risks if released.

On October 12, 1994, EPA published a notice in the *Federal Register* denying Hüls'

petition to remove IPDI from the EHS list. 59 Fed.Reg. 51,816. Hüls then sought judicial review by instituting this action. In Hüls' motion for summary judgment, Hüls argues that EPA acted contrary to the plain meaning of EPCRA by denying the petition. In addition, Hüls claims that EPA's decision to keep IPDI on the EHS list was arbitrary and capricious.

## II. ANALYSIS

### A. Standard of Review

The plaintiff's suit is governed by the Administrative Procedure Act (APA). The Court can only set aside EPA's decision to keep IPDI on the EHS list if the Court finds that EPA acted in a manner that was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). The Court must consider whether the agency's decision was based on a consideration of the relevant factors and whether the agency made a clear error in judgment. The Court cannot substitute its own judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). This standard is highly deferential to the agency and rests on a presumption that the agency's action was valid. *International Fabricare Institute v. EPA,* 972 F.2d 384, 389 (D.C.Cir.1992).

### B. Motions for Summary Judgment

A court may grant a motion for summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. In the alternative, the moving party can demonstrate that the opposing party has failed to establish an essential element of the opposing party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When the moving party has met its burden, the burden of proof shifts to the nonmoving party to demonstrate specific facts that show no genuine issue for trial exists. *Matsushita Electric Industrial Co. v.*

*Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In reviewing the evidence, a court must draw all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). As a result, summary judgment is appropriate only when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

### C. Consideration of the Plaintiff's Argument

#### 1. Plain Meaning of the EPCRA Statute

■ Hüls claims that EPA acted in a manner contrary to the plain meaning of the statute when the agency refused to remove IPDI from the EHS list. The statute reads in pertinent part as follows: "The Administrator may revise the list ... from time to time. Any revisions to the list shall take into account the toxicity, reactivity, volatility, dispersability, combustability, *or* flammability of a substance." 42 U.S.C. § 11002(a)(4) (emphasis added). Hüls complains that EPA did not consider all of the listed factors when it denied the petition.

EPA relied primarily upon one factor, toxicity, in deciding that IPDI should remain on the EHS list. EPA claims quite properly that it did not need to consider all six factors from the statute when amending the EHS list. The word "or" normally has a disjunctive connotation that here only requires EPA to examine one or some of the statutory factors. EPA, therefore, presented a reasonable interpretation of the statute which the Court cannot question. "When a court reviews an agency's construction of the statute which it administers, ... the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). Even if the language of EPCRA could be considered ambiguous, the Court must give deference to a reasonable agency interpretation. "[The court] need not pass on whether there are valid alternative readings of [the statute].... [T]he only question ... is whether [the Administrator's] interpretation of [the statute] is reasonable. *International Union, UMW v. Federal Mine Safety and Health Administration,* 920 F.2d 960, 963 (D.C.Cir. 1990).

#### 2. Arbitrary and Capricious

■ Hüls claims that the Court should set aside EPA's denial of its petition in accordance with § 706(2)(A) of the APA. Hüls contends that EPA did not give adequate reasons for denying the petition and that EPA was arbitrary and capricious in relying on only one type of toxicity data. Toxicity can be measured in a variety of ways, including oral toxicity, inhalation toxicity, and dermal toxicity. EPA relied upon the inhalation toxicity of IPDI to deny Hüls' petition. Hüls notes that IPDI does not meet the oral or dermal toxicity thresholds that EPA allegedly normally uses to determine whether a substance should be on the EHS list. Hüls also challenges EPA's reliance on inhalation toxicity by emphasizing the low vapor pressure of IPDI. Vapor pressure is the measure of the volatility of a substance. According to Hüls, IPDI's low vapor pressure means that at normal atmospheric conditions, the maximum amount of IPDI that could volatilize into the air is unlikely to exist in quantities high enough to cause serious injury by inhalation.

EPA, however, did present credible evidence that IPDI can be toxic when inhaled even at low concentrations. EPA cited commonly used toxicity data from the "Registry of Toxic Effects of Chemical Substances" database maintained by the National Institute of Occupational Health and Safety (NIOSH). The NIOSH data show that the inhalation toxicity for IPDI is over the threshold required for placing a chemical on the EHS list. Under the regulations promulgated pursuant to EPCRA, a substance with a median inhalation lethal concentration of less than 0.50 milligrams per liter would qualify for inclusion on the EHS list. 51 Fed.Reg. 41,574 (1986). The NIOSH database shows, and Hüls does not dispute, that IPDI has a median lethal concentration of

0.26 milligrams per liter. Furthermore, EPA states that even though IPDI has a low vapor pressure under normal atmospheric conditions, facilities will often use the chemical under higher pressures and temperatures that will increase IPDI's volatility.

■ Hüls also asserts that EPA incorrectly interpreted the NIOSH data. Hüls notes that EPA extrapolated the NIOSH data from animal studies conducted under extreme conditions which were unlikely to occur in reality and bore no relationship to the accidental release scenarios which prompted Congress to pass EPCRA. In deciding if EPA has acted in an arbitrary and capricious manner, the Court must be "particularly deferential when reviewing agency actions involving policy decisions based on uncertain technical information." *New York v. Reilly*, 969 F.2d 1147, 1150–51 (D.C.Cir.1992). When the Court is faced with conflicting interpretations of evidence that could lead to two rational conclusions, it gives deference to the interpretation offered by the agency. "[E]ven if the evidence supports both sides of an issue, [the court] will sustain the agency 'if a reasonable person could come to either conclusion on that evidence.' " *Id.* at 1150 (quoting *Public Citizen Health Research Group v. Tyson*, 796 F.2d 1479, 1485 (D.C.Cir.1986)). In addition, when EPA "is evaluating scientific data within its technical expertise . . . 'in an area characterized by scientific and technological uncertainty[,] . . . this court must proceed with particular caution, avoiding all temptation to direct the agency in a choice between rational alternatives.' " *International Fabricare Institute v. EPA*, 972 F.2d 384, 389 (D.C.Cir.1992) (quoting *Environmental Defense Fund, Inc. v. Costle*, 578 F.2d 337, 339 (D.C.Cir.1978)). EPA argues that it is customary to use animal data to determine toxicity for regulatory purposes and claims that it is capable of reasonably extrapolating the data to human conditions. 59 Fed.Reg. 51,819 (1994). Based on the information supplied by EPA, the Court cannot conclude that EPA has acted in an arbitrary and capricious manner by relying on only the inhalation toxicity data and by employing the NIOSH animal studies.

While the above analysis suffices to determine that EPA was not arbitrary and capricious, the Court also notes that EPA did consider the evidence that Hüls presented and responded by proposing to increase the threshold planning quantity for IPDI. 59 Fed.Reg. 51,820 (1994). This would mean that facilities could keep more IPDI on site without becoming subject to EPCRA's reporting requirements. This action is a further sign that EPA did not act in an arbitrary or capricious fashion in denying Hüls' petition.

### III.  CONCLUSION

■ Hüls believes that EPA misinterpreted the EPCRA statute and was arbitrary and capricious in denying Hüls' petition to remove IPDI from the EHS list. The Court, however, gives deference to agencies when they make reasonable analyses of scientific and technical information in their own area of expertise and when they make reasonable interpretations of statutes that they must administer. EPA proffered a reasonable interpretation of the word "or" in 42 U.S.C. § 11002(a)(4) that prevents the Court from finding that EPA acted contrary to the plain meaning of the statute in relying upon toxicity data. In addition, the Court finds that EPA presented credible data in an area of EPA expertise to show that EPA's denial of the petition was not arbitrary and capricious simply because it focused upon inhalation toxicity as reported in the NIOSH database. The Court will, therefore, deny Hüls' motion for summary judgment and grant EPA's motion for summary judgment. An order will be issued to accompany this opinion.

### *ORDER*

In accordance with the Memorandum Opinion issued today, it is hereby ordered that the plaintiff's motion for summary judgment is denied and the defendants' motion for summary judgment is granted.